The plaintiff, John I. Haymond, is an attorney and member of the bar of the state of Connecticut. See Connecticut Practice Book §§ 18 through 23. The defendant statewide grievance committee (committee) pursuant to § 27G of the Practice Book is authorized to decide complaints of attorney misconduct.
The plaintiff was found by the committee to have violated rules 7.1(a)[1] and 8.4(c)[2] of the Rules of Professional Conduct for the use of false and misleading *Page 482 
telephone directory advertisements and television commercials. The plaintiff was thus reprimanded by the committee through its decision of February 21, 1997. The plaintiff filed this appeal of such decision on February 26, 1997. The answer and record were filed on March 27, 1997. Briefs were filed by the plaintiff on May 14, 1997, and by the defendant on June 12, 1997. The parties were heard by oral argument on September 25, 1997.
The Uniform Administrative Procedure Act, General Statutes § 4-166, et seq., does not apply to the committee, but the same principles as to the scope of judicial review are applicable. Pinsky v. StatewideGrievance Committee, 216 Conn. 228, 234, 636 A.2d 760 (1990). The role of the court "is limited to reviewing the record to determine if the facts found are supported by the evidence contained within the record and whether the conclusions that follow are legally and logically correct." (Internal quotation marks omitted.) Weiss v. Statewide GrievanceCommittee, 227 Conn. 802, 812, 633 A.2d 282 (1993).
Allegations of attorney misconduct must be proven by clear and convincing evidence, regardless of the nature of the sanction ultimately imposed. Statewide Grievance Committee v. Presnick, 215 Conn. 162,171-72, 575 A.2d 210 (1990). "The burden is on the . . . committee to establish the occurrence of an ethics violation by clear and convincing proof." Weiss v. Statewide Grievance Committee, supra, 227 Conn. 812. "The phrase `clear and convincing proof' denotes a degree of belief that lies between the belief that is required to find the truth or existence of the issuable fact in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. One court has suggested that "`clear and convincing proof' is `strong, positive, free from doubt,' and `full, clear and decisive.' . . . The burden of persuasion, therefore, in those cases requiring a showing of clear and convincing proof is *Page 483 
sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Citations omitted.)Dacey v. Connecticut Bar Assn. , 170 Conn. 520, 537, 368 A.2d 125
(1976).
The facts are not substantially in dispute. A complaint against the plaintiff was filed on March 29, 1995, by a Massachusetts attorney, Alan Goodman. The complaint addressed advertisements by the plaintiff in Springfield, Massachusetts area telephone directories and television broadcasts.
In 1994 and 1995, the plaintiff placed advertisements for his law firm, the Law Offices of John Haymond, in the Springfield, Massachusetts NYNEX yellow pages telephone directory. A picture of the plaintiff appeared in both advertisements. The 1994 text included a reference to "12 personal injury attorneys." In 1995, the text indicated: "We are a team of fourteen lawyers with nearly 200 years combined experience," and "Licensed in Massachusetts and Connecticut."
The plaintiff's television advertisements featured the plaintiff and contained the following statements: "At the law offices of John Haymond, we protect the rights of accident victims and their loved ones. . . . For accident claims call the Law Office of John Haymond. . . . I'm Attorney John Haymond. . . . The Law Offices of John Haymond works for you and keeps on working. . . . I'm John Haymond and that's my promise."
The plaintiff is a member of the bar of the state of Connecticut and Pennsylvania but is not admitted in Massachusetts. At the time the advertisements were appearing, only four of the attorneys in his firm were admitted to the Massachusetts bar. The plaintiff's professional and supportive staff work out of offices in *Page 484 
Hartford and Bridgeport, Connecticut. A Springfield, Massachusetts office is used as needed for meetings with clients. The plaintiff's law office is a corporation. The president of the corporation at the times of the advertisements was Robert Hochberg.[3]
In his appeal, the plaintiff challenges the jurisdiction of the committee and its choice of law. The jurisdictional claim questions the characterization of advertising as the practice of law. The application of the committee's jurisdiction to out-of-state activities is disputed under due process and commerce clause analysis. The plaintiff claims that if the committee has jurisdiction, it erred in applying Connecticut attorney advertising rules rather than those of Massachusetts.
Rule 8.5 of the Rules of Professional Conduct provides that: "A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction although engaged in practice elsewhere."
The committee correctly concluded that advertising legal services is expressly included within the practice of law. General Statutes § 51-88
a which prohibits "Practice of law by persons not attorneys" expressly includes advertising for legal services in the activities which are prohibited to a person not authorized to practice law. The Connecticut Bar Association in Informal Opinion 95-2 has construed advertising as being encompassed within the restriction of Rule 7.5(b). In The Florida Bar v.Kaiser, 397 So.2d 1132, 1133-34 (Fla. 1981), an attorney not admitted in Florida who deceptively advertised that he was subjected himself to censure for practicing law. *Page 485 
A broad construction of the application of rule 8.5 to "practice elsewhere" is called for by the policy considerations controlling the Rules of Professional Conduct. In liberally construing the committee's jurisdiction in Doe v. Statewide Grievance Committee, 240 Conn. 671,677, 694 A.2d 1218 (1997), and Statewide Grievance Committee v.Rozbicki, 211 Conn. 232, 237-38, 558 A.2d 986 (1989), our Supreme Court noted that "the rules regulating attorney grievance procedures exist within the broader framework of the relationship between attorneys and the judiciary. The practice of law is . . . a profession the main purpose of which is to aid in the doing of justice. . . . An attorney as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. . . . This unique position as officers and commissioner of the court . . . casts attorneys in a special relationship with the judiciary and subjects them to its discipline." (Citations omitted; internal quotation marks omitted.)
The due process and commerce clause challenges to jurisdiction are similarly unavailing.
The due process nexus requirement concentrates on fundamental fairness, i.e., "whether an individual's connections with a State are substantial enough to legitimate the State's exercise of power over him."Quill Corp. v. North Dakota, 504 U.S. 298, 312, 112 S.Ct. 1904,119 L.Ed.2d 91 (1992). "In contrast, the Commerce Clause and its nexus requirement are informed . . . by structural concerns about the effects of state regulation on the national economy." Id. Thus, "the Due Process Clause and the Commerce Clause are analytically distinct." Id., 305.
The plaintiff's unique relationship to Connecticut and its judiciary as an attorney licensed to practice in Connecticut establish a substantial connection which justifies *Page 486 
the state's exercise of power over his practice of law in Massachusetts. This is especially the case in view of the development of the law of due process jurisdiction noted in Quill Corp. v. North Dakota., supra,504 U.S. 298. The inquiry is whether the party has contacts with the state to make its action reasonable under our federal system of government. Shaffer v. Heitner, 433 U.S. 186, 212, 97 S.Ct. 2569,53 L.Ed.2d 683
(1977); National Bellas Hess v. Dept. of Revenue, 386 U.S. 753,756, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967); International Shoe Co. v.Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed.2d 95 (1945);District of Columbia v. Chase Manhattan Bank, 689 A.2d 539, 542
(D.C.App. 1997).
In evaluating a state's right to regulate the conduct of lawyers the United States Supreme Court in a first and fourteenth amendment case, involving freedom of speech and due process of law recognized that: "A lawyer's procurement of remunerative employment is a subject only marginally affected with First Amendment concerns. It falls within the State's proper sphere of economic and professional regulation. . . . While entitled to some constitutional protection, appellants' conduct is subject to regulation in furtherance of important state interests." (Citation omitted.) Ohralik v. Ohio State Bar Assn. , 436 U.S. 447, 459,98 S.Ct. 1912, 56 L.Ed.2d 444 (1978). Also, even in a first amendment context, commercial speech is only protected based on its informational function. First National Bank of Boston v. Bellotti, 435 U.S. 765, 783,98 S.Ct. 1407, 55 L.Ed.2d 707, reh. denied, 438 U.S. 907, 98 S.Ct. 3126,57 L.Ed.2d 1150 (1978). "Consequently, there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity. The government may ban forms of communication more likely to deceive the public than to inform it." Central Hudson Gas Electric *Page 487 
v. Public Service Commission, 447 U.S. 557, 563, 100 S.Ct. 2343,65 L.Ed.2d 341 (1980).
If the fundamental freedoms protected by the first amendment do not rise to protect misleading advertising; then, surely the commerce clause would similarly fail. The commerce clause is designed to limit state regulations on the national economy. Quill Corp. v. North Dakota, supra,504 U.S. 298.
The plaintiff fails to show how limiting his misleading advertisements in Massachusetts unduly restrict the national economy. The plaintiff is not prohibited from advertising in other states; only, as a Connecticut lawyer, from misleading consumers. Connecticut has acted because the plaintiff enjoys the privileges of being a Connecticut attorney. If the plaintiff were licensed in Massachusetts, he would be subject to essentially identical ethical rules. Massachusetts Rules of Court (State), Canons of Ethics and Disciplinary Rules Regulating the Practice of Law, DR1-102(A) (4), DR2-101(A) (West, 1997)
The plaintiff's primary argument is the choice of law issue. The plaintiff argues that the committee erred in applying Connecticut law to the Massachusetts conduct. The plaintiff alternatively claims that the matter should be remanded with instructions that the committee seek to invoke the jurisdiction of the Massachusetts board of bar overseers;[4]
or direct the committee to apply Massachusetts ethics law in the present case.
The plaintiff's issue is not raised by the facts of the present case. There is nothing to suggest that the challenges to the advertisements at issue could have been resolved differently under Massachusetts ethical rules. The plaintiff points out that although the rules on lawyer advertising are essentially identical in Connecticut and *Page 488 
Massachusetts;[5] judicial gloss in Massachusetts establishes that restrictions on lawyer advertising cannot be more broadly defined than is reasonably necessary. (Announcement following DR 2-101 of the Massachusetts Canons of Ethics and Disciplinary Rules.) The rule in Connecticut would be the same pursuant to the first amendment constitutional mandate articulated in Bates v. State Bar of Arizona,433 U.S. 350, 384, 97 S.Ct. 2691, 53 L.Ed.2d 810 reh. denied, 434 U.S. 881,98 S.Ct. 242, 54 L.Ed.2d 164 (1977). "[T]he regulation must be narrowly drawn and must not be more extensive than is necessary to serve that interest. Central Hudson Gas Electric Corporation v. Public ServiceCommission of New York, supra, [447 U.S.] 566." Grievance Committee v.Trantolo, 192 Conn. 27, 33, 470 A.2d 235 (1984).
In the absence of a conflict, there does not appear to be a choice of law problem. "When the applicable law of a foreign state is not shown to be otherwise, we presume it to be the same as our own." Walzer v.Walzer, 173 Conn. 62, 76, 376 A.2d 414 (1977), citing Hendrix v.Hendrix, 160 Conn. 98, 109, 273 A.2d 890 (1970).
"Under modern conflicts-of-law theory, where there is a `false conflict' such that the `laws of both states relevant to the set of facts are the same, or would produce the same decision in the lawsuit, there is no real conflict between them.' R.A. Leflar, American Conflicts of Law § 92 (4th Ed. 1986). In such a case, the *Page 489 
`case ought to be decided under the law that is common to both states.' R.A. Lefler, American Conflicts of Law § 92 (4th Ed. 1986)." BostonHides Furs, Ltd. v. Sumitomo Bank, Ltd., 870 F. Sup. 1153, 1159
(D.Mass. 1994). "It is only after a determination is made that there is indeed an actual conflict between the laws of the particular jurisdictions that the interests of the respective jurisdictions are analyzed." Grossman v. Club Med Sales, Inc., 273 N.J. Super. 42, 49,640 A.2d 1194 (1994).
The plaintiff's demand for a referral to the Massachusetts board of bar overseers is unwarranted for several reasons. The plaintiff is not a member of the Massachusetts bar and not subject to its ethical rules for attorneys. The Massachusetts board of bar overseers has declined to take jurisdiction over this complaint. The president of the plaintiff's firm, Hochberg, is no longer available to defend the advertising before the Massachusetts board of bar overseers in the unlikely event that they would entertain the case.
The plaintiff is disciplined for his personal conduct in the misleading advertising. The committee is within its authority in disciplining the plaintiff for the nature of his advertising in Massachusetts.
 The appeal is dismissed.