[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY NO. 196)
The plaintiffs, Stephen and Sandra Schweighoffer, filed a four-count amended complaint on October 12, 1995. The plaintiffs have brought a products liability action against the defendants, Alfred Pesavento d/b/a Hemlock Hardware Power Equipment a/k/a Hemlock True Value Hardware (Pesavento), Galaxy Chemical Company, Inc. (Galaxy), and Masback, Inc. d/b/a Masback Hardware Company (Masback). The plaintiffs allege that on September 21, 1993 Stephen Schweighoffer was using a drain-cleaning product manufactured, sold or distributed by Galaxy to Masback which in turn sold it to Pesavento. The product was ultimately purchased from Pesavento's store. When the product was used in conjunction with water by Stephen Schweighoffer in the course of his employment, it erupted from the drain, causing him severe and permanent injuries. CT Page 9988
On December 18, 1995, Galaxy filed a revised third party complaint against Rowell Chemical Corporation (Rowell), alleging that Galaxy had purchased the chemicals which were used to make the drain cleaner from Rowell, and seeking indemnification and other damages. On November 12, 1997, Rowell filed a motion for summary judgment on the third party complaint. The matter was heard by the court on June 30, 1998.
Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact, a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]. Maffucci v. RoyalPark Limited Partnership, 243 Conn. 552, 554-55, 707 A.2d 15
(1998).
Rowell argues that Galaxy was a bulk purchaser of the chemicals supplied to create the drain cleaner, and that because Rowell mixed the chemicals to Galaxy's specifications, Galaxy should be considered a "sophisticated user" presumed to know the uses and dangers of the chemicals. Based on Galaxy's status as a sophisticated used, Rowell further argues that its duty to inform the ultimate purchaser (Stephen Schweighoffer) of the dangers associated with the product was discharged when it supplied Galaxy with the appropriate material safety data sheets. Rowell asserts that it was required to supply the material safety data sheets pursuant to 29 C.F.R. § 1910.1200 of the Occupational Health and Safety Standards, which preempts any state safety or warning requirements. Rowell further argues that it is entitled to summary judgment as a matter of law because Galaxy cannot establish that Rowell was the supplier of the injury-causing chemicals.
Galaxy argues that, under the Connecticut Product Liability CT Page 9989 Act, issues such as user awareness and the adequacy of the manufacturer's or distributor's warnings are questions for the trier of fact. Thus, Galaxy argues, Rowell's sophisticated user defense is without merit. Galaxy also contends that a genuine issue of material fact exists concerning whether Rowell supplied the chemicals comprising the drain cleaner used by Stephen Schweighoffer. Galaxy further argues that a factual dispute exists concerning whether Rowell expressly or impliedly warranted the fitness of the product.
Rowell argues in response that Galaxy's reliance on Connecticut law is misplaced, because the federal regulations requiring certain information and warnings concerning hazards and appropriate safety measures for the use of hazardous chemicals preempts state law. Rowell contends that it has complied with the federal regulations, and therefore has fully discharged its duty to Galaxy. Rowell also argues that pursuant to General Statutes § 52-572q,[1] Galaxy is not a claimant and therefore may not seek indemnity from Rowell.
 A. Preemption
The question of preemption is one of federal law, arising under the supremacy clause of the United States constitution. Whether Congress has exercised its power to preempt state law is a question of legislative intent. Preemption may be express or implied. Express preemption occurs to the extent that a federal statute expressly directs that state law be ousted to some degree from a certain field. However, even where there is no express statutory statement ousting state law from a given area, there may be implied preemption. The United States Supreme Court has instructed us that:
 ". . . absent an explicit statement that Congress intends to preempt state law, courts should infer such intent where Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the States to supplement federal law . . . or where the state law at issue conflicts with federal law, either because it is impossible to comply with both, . . . or because the state law stands as an obstacle to the accomplishment and execution of congressional objectives." (Citations omitted; internal quotation marks omitted.) Dowling v. Slotnik, 244 Conn. 781, 791, (1998).
CT Page 9990
29 C.F.R. § 1910.1200 provides:
 "(a) Purpose. (1) The purpose of this section is to ensure that the hazards of all chemicals produced or imported are evaluated, and that information concerning their hazards is transmitted to employers and employees. This transmittal of information is to be accomplished by means of comprehensive hazard communication programs, which are to include container labeling and other forms of warning, material safety data sheets and employee training. (2) This occupational safety and health standard is intended to address comprehensively the issue of evaluating the potential hazards of chemicals, and communicating information concerning hazards and appropriate protective measures to employees, and to preempt any legal requirements of a state, or a political subdivision of a state, pertaining to this subject. . . Under section 18 of the Act, no state or political subdivision of a state may adopt or enforce, through any court or agency, any requirement relating to the issue addressed by this Federal standard, except pursuant to a Federally-approved state plan." (Emphasis added.)
In view of this language, it would appear that Congress has expressly exercised its power to preempt any state laws regarding the communication of potential hazards regarding chemicals. Therefore, § 52-572q, which leaves to the trier of fact such issues as "whether there is a duty to warn, whether the manufacturer or the seller is in a better position to directly warn the ultimate user, whether the warnings were adequate, and the consideration to be given to the "sophisticated user doctrine"; (see Gajewski v. Pavelo, 36 Conn. App. 601, 612, 652 A.2d 509
(1994), aff'd, 236 Conn. 27, 670 A.2d 318 (1996)) has been preempted as to the issue of safety warnings for hazardous chemicals. Specifically, the sophisticated user doctrine under Connecticut law is a defense when the product seller has reason to believe that the purchaser of the product will recognize the dangers associated with the product, and therefore no warnings are mandated. Id., 615. Such a defense is at odds with29 C.F.R. § 1910.1200(g)(1), which provides:
Chemical manufacturers and importers shall obtain or develop a material safety data sheet for each hazardous CT Page 9991 chemical they produce or import. Employers shall have a material safety data sheet in the workplace for each hazardous chemical which they use. . . (6)(i) Chemical manufacturers or importers shall ensure that distributors and employers are provided an appropriate material safety sheet with their initial shipment, and with the first shipment after a material safety data sheet is updated. . . (7)(i) Distributors shall ensure that material safety data sheets, and updated information, are provided to other distributors and employers with their initial shipment and with the first shipment after a material safety sheet is updated.
This comprehensive scheme requires all parties dealing with chemicals to pass on to other parties material safety data sheets outlining any hazardous qualities of the chemicals. The preemptive force of the federal regulations also renders irrelevant any issue regarding state warranty claims.
The court in Pap v. Leslie's Pool Mart, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 319881 (November 29, 1995) (Levin, J.) (15 CONN. L. RPTR. 417), addressed a similar issue. The court interpreted the preemptive force of the Federal Insecticide, Fungicide and Rodenticide Act as preempting state common law tort actions based on labeling and packaging of pesticides. The court there found significant the regulation's use of the word "requirement," holding that this language preempted all state law claims falling under the regulations. Id., 418. The court adopts the reasoning of the Pap court in considering the term "requirement" in the context of 29 C.F.R. § 1900.1200(a)(2). But see PacificIns. Co. v. Dymon, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 321023 (August 26, 1996) (Ballen, J.) (17 CONN. L. RPTR. 502) (in claim brought under Federal Insecticide, Fungicide and Rodenticide Act, any claims requiring a showing that labeling or packaging should have contained additional or clearer warnings were preempted, but additional claim regarding how the product was marketed and sold was allowed since it fell outside of FIFRA).
Here there is no indication that the criteria of29 C.F.R. § 1910.1200 may be circumscribed where a party is known to be aware of hazards or is using the chemicals for a particular task. Accordingly, Rowell and Galaxy's discussions of the sophisticated user defense and the content of any warranties for fitness are irrelevant. The material issue is whether Rowell discharged its duties under the CT Page 9992 regulations by providing Galaxy with compliant material safety data sheets.
 B. Rowell's Duty To Galaxy 29 C.F.R. § 1910.1200(g)(2) provides the required elements of a material data safety sheet, which must be in English and contain at least: the chemical and common names of the substances used to make the chemical; the physical and chemical characteristics of the hazardous chemical (such as vapor pressure and flashpoint); the health hazards of the hazardous chemical, including signs and symptoms of exposure, and any medical conditions which are generally recognized as being aggravated by exposure to the chemical; the primary route(s) of entry; permissible exposure limits; whether the hazardous chemical is a potential carcinogen; any generally applicable precautions for safe handling and use which are known to the preparer of the material safety data sheet; applicable control measures, such as work practices or personal protective equipment; emergency and first aid procedures; the date or preparation of the last material safety data sheet or the last change to it; and the name, address and telephone number of the chemical manufacturer, importer, employer or other responsible party preparing or distributing the material safety data sheet, who can provide additional information on the hazardous chemical and appropriate emergency procedures, if necessary.
Rowell has provided the affidavit of Terrence J. Matray, Executive Vice President of Rowell Chemical Corporation. Matray avers that Rowell regularly supplied to Galaxy a copy of the material safety data sheets. (Motion For Summary Judgment, Exhibit A, Affidavit of Terrence J. Matray). A copy of the material safety data sheets sent to Galaxy is attached to the affidavit. (Motion For Summary Judgment, Exhibit A, Affidavit of Terrence J. Matray, Exhibit 2). Matray attests that the material safety data sheets provide all pertinent safety data. (Affidavit of Terrence J. Matray, ¶ 18). The data sheets, however, are dated June 28, 1990. Galaxy claims that the pertinent shipment occurred in 1993. The regulations require that updated information be included in the material safety data sheets.29 C.F.R. § 1910.1200(g)(2) (xi).
Consequently, a genuine issue of material fact exists as to whether the information contained in the material safety data sheets has changed or has been updated between 1990 and 1993, and whether Rowell provided Galaxy with these updates. Accordingly, CT Page 9993 it is not possible to determine whether Rowell fully complied with the requirements of the regulations at the time of Stephen Schweighoffer's injury in 1993.
Inasmuch as the federal regulations preempt any state claims pertaining to hazardous chemicals and inasmuch as material issues of fact remain in dispute concerning whether Rowell complied with the federal regulations, Rowell's motion for summary judgment is hereby denied.
MELVILLE, J.